## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | | |
|---|---|---|
| MARILYN HURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-06106-SRB |
| | ) | |
| MFA INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant MFA Incorporated's Motion for Summary Judgment. (Doc. #50.) For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL BACKGROUND

For the purpose of resolving the pending motion, and unless otherwise indicated, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

Plaintiff Marilyn Hurt ("Plaintiff") is a female and was born in 1954. Defendant MFA Incorporated ("Defendant") is a regional farm supply and marketing cooperative that serves farmers in Missouri and adjacent states. Beginning on November 4, 1996, Defendant employed Plaintiff as a bookkeeper at Defendant's facility in Bethany, Missouri. On November 12, 2007, Plaintiff transferred to and worked as a bookkeeper at Defendant's facility in Albany, Missouri.

---

[1] The purpose of this Order is to identify the genuine issues of material fact found by the Court and to explain why those facts preclude judgment as a matter of law. The parties' briefs, including statements of fact (but not including exhibits), span nearly 300 pages. The Court need not discuss all of the facts or all of the factual disputes because it is the jury's role to resolve disputed facts. As required by applicable law, disputed facts are viewed in the light most favorable to Plaintiff, the non-moving party. This discussion should not be construed as findings of fact.

At both locations, Plaintiff's job duties as a bookkeeper included paying bills, taking care of grain, handling customer accounts, producing month end reports, and taking care of payroll.

At Albany, David Cooper ("Mr. Cooper") was Plaintiff's supervisor from approximately November 2007 through March 2018. Mr. Cooper never discussed performance issues with Plaintiff and generally gave her positive annual performance reviews. When Mr. Cooper was her supervisor, Plaintiff usually worked from 8:00 a.m. to 5:00 p.m. and some Saturdays when she needed to work. Like other employees, Plaintiff would accrue overtime hours if she did not take a one-hour lunch break during the work week. Plaintiff and Mr. Cooper had an understanding that Plaintiff could decide whether she needed to work overtime, and Mr. Cooper allowed Plaintiff to make that decision. Mr. Cooper did, however, tell Plaintiff and her coworkers to watch their overtime if business was slow.

In June 2018, Joshua Miller ("Miller") became Plaintiff's new supervisor at the Albany facility. At that time, Miller was 35 or 36 years old. Miller had responsibility for managing eight employees. In August 2018, Plaintiff purchased a hearing aid because she could not hear Miller. Plaintiff does not recall telling Miller about the hearing aid, but did tell Miller that she could not hear him. On one occasion, Miller was having a conversation with a customer at the counter. Miller and the customer then began talking to Plaintiff, but Plaintiff did not know they were talking to her. Plaintiff testified that when she looked up, Miller had a smile on his face as though it was funny that Plaintiff could not hear them. Plaintiff testified that on other occasions, Miller would holler at her from his office, even though he knew she did not understand what he was asking her. Plaintiff would have to stop working and go to Miller's office to find out what he wanted.

2

Miller held employee meetings and discussed overtime, lunch breaks, hours, and reducing overtime. At one meeting, Miller told employees they should try to limit overtime by taking lunch as opposed to working through lunch and calling it overtime. However, between June 2018 and October 2018, Miller did not directly discuss with Plaintiff her use of overtime hours.

Plaintiff believed her job duties did not change when Miller became her supervisor. On October 26 or 27, 2018, Miller told Plaintiff he wanted to change some things at the Albany location. These changes included Plaintiff answering telephone calls and helping customers more promptly. Plaintiff did not believe her job duties included those tasks, but offered to help with them. (Doc. #60-2, p. 33.)[2] Plaintiff told Miller "I can try to start to help answer the phone, help try to cover the counter more[.]" (Doc. #60, p. 91.) Plaintiff and Miller also discussed her work schedule, and agreed on 9:00 a.m. to 6:00 p.m. According to Plaintiff, she also discussed working additional hours on Saturday to "get the drawer closed." (Doc. #57, p. 67.)

On Saturday, October 27, 2018, Miller gave Plaintiff a Performance Improvement Plan ("PIP"). The PIP indicated that Plaintiff did not meet minimum expectations. (Doc. #52-1, p. 225.) The PIP stated Plaintiff needed to improve on assisting customers at the counter, answering the phone, and minimizing overtime. The "expected results" included assisting customers at the counter, answering the phone, and to "[s]tart at 9:00 AM and without any mistakes at the drawer, be done by 6:00 pm during the week." (Doc. #52-1, p. 225.) Until the day before or the day of issuing the PIP, Miller never had any one-on-one conversations with Plaintiff about any of the items in the PIP. The PIP gave Plaintiff thirty days to make the improvements or face termination.

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

Miller also gave Plaintiff her Annual Performance Appraisal on October 27, 2018. Other than some information that had already been filled in from a prior year, Miller completed the appraisal without input from any other person. Miller gave Plaintiff an aggregate rating of 3.2. Miller believed a 3.2 rating meant the employee's job performance is not perfect, but reflected standard performance and that the employee was doing her job. The appraisal included necessary improvements, which were "answer phone timely," and "assist customers timely." (Doc. #52-1, p. 237.) The stated goal was "keep overtime to a minimum." (Doc. #52-1, p. 237.)

Plaintiff objected to the PIP and appraisal after having an opportunity to fully review them. Plaintiff contacted Miller and Amanda Cooper ("Ms. Cooper") in Human Resources and explained that the items in the PIP were never previously told to her, explained to her, nor required of her as of October 2018. Ultimately, Miller and Cooper determined that the PIP and appraisal were not the fairest thing to do and should be voided. The PIP and the original appraisal were therefore voided.

On November 2, 2018, Miller issued Plaintiff a second Annual Performance Appraisal. The second appraisal also gave Plaintiff an aggregate score of 3.2. The second appraisal contained "necessary improvements," including answering the telephone promptly and timely assisting customers. (Doc. #52-1, p. 245.) The second appraisal also set a goal of "keep overtime to a minimum." (Doc. #52-1, p. 245.) Plaintiff received a raise after issuance of the second appraisal. Because the PIP had been rescinded, Plaintiff was not on a performance improvement plan.

Following the second appraisal, Miller believed Plaintiff "improved tremendously on the phone and counter." (Doc. #60, p. 109.) Plaintiff did not hear any complaints from Miller about

4

her job performance in these areas after November 1, 2018.  However, Plaintiff believed that performing these tasks interrupted her normal bookkeeping work and led to overtime hours.

During all relevant time periods, every employee at the Albany location accumulated overtime.  Miller had the responsibility of approving or not approving overtime for employees. Although Plaintiff's second appraisal told Plaintiff to minimize overtime, Miller did not directly discuss with Plaintiff the ways in which she could accomplish that goal.  Miller expected that Plaintiff would work some overtime and never prohibited her from doing so on any particular occasion.  Miller also testified that bookkeepers at all locations occasionally have to work overtime, including when the office is closed.  During Miller's time at Albany, no employee has ever had overtime work discounted or not paid for lack of authorization.  Other employees at Albany had substantially more overtime work than Plaintiff.

On May 25, 2019, the Albany facility was closed because it was the Saturday before Memorial Day.[3]  Plaintiff went to the facility that day to complete month-end bookwork and worked approximately two hours of overtime.  Plaintiff had not been instructed that she should not work that day.  Miller saw Plaintiff's vehicle at the office and stopped by.  Miller did not ask Plaintiff why she was working, did not tell Plaintiff she should not be working, or raise any other concerns.  Miller did, however, contact two other bookkeepers and asked if they knew of a reason why Plaintiff would be working overtime.  The bookkeepers did not identify any such reason.  Miller also contacted Ms. Cooper.  Miller and Ms. Cooper decided to give Plaintiff a written reprimand for unauthorized overtime work.

On Tuesday, May 28, 2019, Miller called Plaintiff into his office.  Miller asked Plaintiff why she could not get her work done and why she had accrued overtime.  In response to Miller's

---

[3] The parties inconsistently state the date as Saturday, May 25 and Saturday, May 26.  (*Compare* Doc. #60, ¶ 107 *with* ¶ 161.)  It appears the correct date is Saturday, May 25.

questions, Plaintiff said she could not get her work done "when I'm waiting the counter and answering the phone." (Doc. #60-1, p. 123.) Plaintiff testified she did not argue with Miller or refuse to do any work.

According to Miller, Plaintiff was argumentative and said "if you don't want me to get overtime and still do a month end cutoff, then I'm not answering the phone or waiting the customer." (Doc. #52, p. 15.) Miller told Plaintiff he was not going to argue with her and terminated her employment. Later that day, Miller told Plaintiff he had previously said "no more overtime," and that the rescinded-PIP "didn't go away." (Doc. #52, p. 15.)

Miller drafted a Personnel Action Form after terminating Plaintiff. The form states "involuntary termination" as a result of "insubordination." (Doc. #57-35, p. 1.) The "details of insubordination" state that Plaintiff was "[r]epeatedly asked to reduce overtime hours and work towards becoming more efficient with her time. She has repeatedly refused to reduce the number of overtime hours worked." (Doc. #57-35, p. 1.) The form does not state Plaintiff argued with Miller, that Plaintiff refused to perform any tasks, or that Plaintiff worked unauthorized overtime on May 25, 2019.

After Plaintiff's termination, Defendant posted a job listing for the bookkeeper position at Albany. The job listing requires the applicant to be "available to work on Saturdays and Sundays" and "overtime (as needed)." (Doc. #57, p. 87.) Miller and another employee made the decision to hire Whitney Russell ("Ms. Russell"), a 24 year-old female, for the position. Ms. Russell previously worked as a bookkeeper at Defendant's facility in Maysville, and had been trained by Plaintiff. From June 2018 through May 2019, Russell had more overtime than Plaintiff and averaged more overtime per pay period than Plaintiff. After becoming Albany's

6

bookkeeper, Russell has continually submitted overtime hours.  Miller has never counseled Russell about her use of overtime.

On July 22, 2020, Plaintiff filed this lawsuit against Defendant.  The Complaint asserts the following claims:  Count I—Sex Discrimination in violation of the Missouri Human Rights Act ("MHRA"); Count II—Age Discrimination in violation of the MHRA; Count III—Disability/Perceived Disability Discrimination in violation of the MHRA; Count IV—Sex Discrimination under Title VII; and Count V—Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA").

Defendant now moves for summary judgment on each claim under Federal Rule of Civil Procedure 56.  Defendant argues that Plaintiff has not presented sufficient evidence to support a prima facie case of discrimination.  Defendant argues that even if Plaintiff had made a prima facie case, the record shows legitimate, non-discriminatory reasons for Plaintiff's termination, and that Plaintiff cannot show those reasons were pretextual.  Plaintiff contends there are disputed issues of material fact and that summary judgment is not warranted on any claim.  The parties' arguments are addressed below.

**II.  LEGAL STANDARD**

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is

7

a genuine issue for trial." *Id.* (quotation marks omitted).  If there is a genuine dispute as to

certain facts, those facts "must be viewed in the light most favorable to the nonmoving party."

*Id.*  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III.  DISCUSSION

### A.  Count I—Sex Discrimination Under the MHRA.

Count I asserts a claim for sex discrimination under the MHRA.  Absent direct evidence

of discrimination, an MHRA discrimination claim is analyzed through the burden-shifting

analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]  *See* Mo. Rev.

Stat. § 213.101.3.  Under *McDonnell Douglas*, a plaintiff must first show a prima facie case of

discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff makes this showing, the

burden shifts to the employer to articulate "a legitimate, nondiscriminatory reason for its

actions." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014).  If the

employer meets its burden, "the burden shifts back to the employee, who must then prove the

employer's asserted reason was merely pretext for discrimination." *Id.*

#### 1.  Plaintiff Has Made a Prima Facie Case of Sex Discrimination.

"[T]o establish a prima facie case of sex discrimination" under the MHRA, "the

employee must demonstrate:  (1) the employee was a member of a protected class; (2) the

employee was qualified to perform the job; (3) the employee suffered an adverse employment

action; and (4) the employee was treated differently from other similarly situated employees of

the opposite sex." *Lampley v. Missouri Comm'n on Hum. Rights*, 570 S.W.3d 16, 24 (Mo. banc

2019).  A plaintiff may alternatively meet the fourth element by showing "some other evidence

---

[4] The parties appear to agree, and the Court finds, that there is no direct evidence of discrimination.

that would give rise to an inference of unlawful discrimination." *Id.*[5] A plaintiff must also present evidence which shows her protected status was "the motivating factor" in the employer's decision. Mo. Rev. Stat. § 213.010(19). "The motivating factor" means that "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." *Id.*

### a. Member of a Protected Class

First, Plaintiff is female and thus a member of a protected class. *Hoaglin v. Hy-Vee Inc.*, No. 18-03262-CV-RK, 2019 WL 2028559, at *2 (W.D. Mo. May 8, 2019) ("Plaintiff is a member of a protected class because she is female.") (applying Missouri law). Defendant does not dispute this point.

### b. Qualified to Perform the Job

Second, the record supports a finding that Plaintiff was qualified to perform her job as a bookkeeper. Plaintiff performed that job for approximately 23 years prior to her termination, and received satisfactory performance reviews throughout her employment. *McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 874 n.2 (8th Cir. 2011) (recognizing that "under the qualification prong, a plaintiff must show only that he possesses the basic skills necessary for performance of the job"). These facts show that Plaintiff was qualified to perform her job as bookkeeper.[6]

---

[5] To resolve claims under the MHRA, the Court "primarily appl[ies] Missouri law but may also apply federal employment discrimination law to the extent federal law is applicable and authoritative under the MHRA." *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1019 (8th Cir. 2019) (citations and quotation marks omitted).

[6] Defendant's stated reasons for terminating Plaintiff are relevant to whether Defendant had a legitimate reason for the termination, not whether Plaintiff can make a prima facie case. *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) ("Lake establishes his prima facie case if, setting aside Yellow's reason for firing him, he was *otherwise* meeting expectations or *otherwise* qualified.") (emphasis in original). Even if Defendant's stated reasons were relevant, there are disputed facts regarding whether those reasons were legitimate and/or pretextual.

### c. Adverse Employment Action

Third, there is no dispute that Plaintiff's termination constitutes an adverse employment action.

### d. Different Treatment for Similarly Situated Employees of Opposite Sex or Other Evidence from Which Discrimination May be Inferred

Fourth, Plaintiff must present evidence (a) that she was treated differently than similarly situated male employees and/or (b) other evidence from which sex discrimination may be inferred. To determine "whether coworkers were 'similarly situated,' courts analyze factors including whether the same supervisor imposed the discipline, whether the coworkers were subject to the same standards, whether they engaged in conduct of similar seriousness, and similar factors." *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 119 (Mo. banc 2015). "Employees are similarly situated if they are accused of similar conduct and are disciplined in different ways." *Jain v. CVS Pharm., Inc.*, 779 F.3d 753, 759 (8th Cir. 2015) (applying Missouri law).

Here, Defendant argues that "Plaintiff has not identified the name of a single male employee that engaged in the same conduct as Plaintiff" (e.g., improper use of overtime and arguing with their supervisor) "and who received treatment more favorable than her own." (Doc. #51, p. 9; Doc. #60, p. 138.) Plaintiff argues she has presented evidence of similarly situated male employees that used overtime but were not punished, and that there are factual disputes regarding whether she argued with Miller at the time of her termination.

Upon review, the Court finds there are disputed material facts regarding the similarly situated inquiry. At the Albany office, Miller managed eight employees. Miller had responsibility for authorizing employee overtime work. Plaintiff has identified specific male employees, including John Bush, David Hansel, Troy James, Terry Morgan, Roger Pigg, and

Jerald Williams, who incurred overtime. Unlike Plaintiff, these male employees were not punished or otherwise sanctioned for their use of overtime.[7]

Plaintiff also testified that Miller would have one-on-one conversations with male employees at the Albany location, but did not have such conversations with her. According to Plaintiff, Miller would also holler at her from his office when he wanted something. This required Plaintiff to stop working and go to Miller's office to find out what he wanted. In contrast, Plaintiff testified that Miller just called male employee John Bush on the phone whenever he needed something. Under these circumstances, Plaintiff has presented facts which show she was treated differently than similarly situated male employees.

Defendant argues the male employees are not similarly situated because there is no evidence that they "argued with their supervisor regarding their performance of their duties after unapproved and unjustified overtime use." (Doc. #51, p. 10.) However, Defendant's contention that Plaintiff argued with Miller is based on the testimony and recollection of Miller. Plaintiff testified she did not argue with Miller or raise her voice during the termination meeting. Plaintiff also testified she never refused to answer the phone or wait on customers absent overtime pay. Miller and Plaintiff's conflicting testimony creates a genuine issue of material fact regarding whether Plaintiff was insubordinate at the time of her termination. There are also factual disputes regarding whether Plaintiff incurred unnecessary overtime hours.

---

[7] Defendant's opening brief contends that Plaintiff was terminated, in part, due to "unjustified overtime without authorization." (Doc. #51, pp. 11-12.) Defendant's reply brief contends that "whether Plaintiff ever worked 'unauthorized' overtime . . . is immaterial for purposes of summary judgment." (Doc. #60, p. 138.) Notwithstanding Defendant's shifting positions, the Court finds that Plaintiff's use of overtime is a material disputed fact. Although Defendant contends that Plaintiff repeatedly incurred unauthorized overtime hours, Defendant failed to (1) identify a single date that Plaintiff worked unnecessary overtime, and (2) present evidence which explains why overtime was unnecessary on that date. Instead, the record shows that Defendant consistently paid Plaintiff for her overtime work. Further, other than Miller's summary conclusion, the record does not show that Plaintiff improperly worked overtime on Saturday, May 25. Although Miller asked other bookkeepers about whether Plaintiff needed to work overtime on that day, there is no indication that those bookkeepers knew Plaintiff's workload at that time, the Albany facility's workload at that time, or any other salient facts.

For these reasons, the Court finds that Plaintiff has presented evidence showing she was treated differently than similarly situated male employees.

### e. Sex as the Motivating Factor

Finally, Defendant argues Plaintiff lacks evidence showing that sex was the motivating factor in her termination. Defendant contends that Plaintiff cannot make this showing because she was replaced by another woman, Ms. Russell. Defendant also argues that Miller had one-on-one conversations with Ms. Russell when she visited the Albany office, which undercuts Plaintiff's contention that Miller only had such conversations with male employees.[8]

Upon review, the Court disagrees and finds that Plaintiff has presented evidence sufficient to show that sex was the motiving factor in her discipline and/or termination. As explained by Plaintiff, this evidence includes the following:

> • Ms. Hurt was the only female employee at the Albany location for the majority of the time between June 2018 and May 2019, and, while Miller would consistently have one-on-one conversations with the male employees at the Albany location, he would not have those conversations with Ms. Hurt.
>
> • Miller would make phone calls to other male employees at the Albany location, he would holler to her from his office and have her come to his office, instead of talking to her through the phone system.
>
> • Several male employees at the Albany location, who were supervised by Miller, had overtime in amounts more than Ms. Hurt, but there is no record of any of those male employees receiving a PIP.
>
> • No male employee received a PIP from June 2018 to May 28, 2019 from Miller regarding their working overtime. But Ms. Hurt received one.
>
> • In September 2019, a male employee named David Hansel, who was supervised by Mr. Miller, was terminated by Miller on the basis his position was being eliminated, and Mr. Hansel received a severance package. But when the position of a female employee, who was also supervised by Mr.

---

[8] Miller's one-on-one meetings with Ms. Russell occurred when Ms. Russell still worked at the Maysville facility. Plaintiff testified that Miller would call the Maysville location and ask Ms. Russell to bring him the Maysville credit card, even though the Albany facility did not need it. The jury may resolve any inferences that may be drawn from these facts.

Miller, Connie Worden was eliminated and Ms. Worden's employment was terminated in July 2019, no severance package was given to Ms. Worden.

(Doc. #57, p. 101) (internal citations to the record omitted).

For all these reasons, Plaintiff has carried her burden of showing a prima facie case of discrimination, and that her sex was the motivating factor behind her termination.

## 2. Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination.

Because Plaintiff carried her initial burden, the second step under *McDonnell Douglas* shifts the burden to Defendant to articulate a legitimate, non-discriminatory reason for the termination. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Floyd v. Missouri Dep't of Social Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).

The Court finds that Defendant carried its burden. Defendant has presented evidence that Miller counseled all employees about their use of overtime, that Plaintiff's performance review instructed her to minimize the use of overtime, and that Miller believed Plaintiff incurred unnecessary overtime on May 25, 2019. According to Miller, Plaintiff then argued with him about overtime and job tasks which resulted in her termination. The evidence presented by Defendant is sufficient to show that Plaintiff was terminated for legitimate, non-discriminatory reasons.

## 3. Plaintiff has Presented Evidence that Defendant's Reasons Were Pretextual.

To avoid summary judgment, the final step under *McDonnell Douglas* requires Plaintiff to show that Defendant's "asserted reason[s] w[ere] merely pretext for discrimination." *Johnson*, 769 F.3d at 611. Pretext may be shown if there is evidence showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court

13

that a prohibited reason more likely motivated the employer." *Torgerson*, 643 F.3d at 1047 (cleaned up). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.*

Upon review, the Court finds that Plaintiff has presented evidence showing that Defendant's stated reasons were pretextual. With respect to Plaintiff's overtime work, and as discussed above, Miller testified that a bookkeeper may need to work overtime. Although Miller told Plaintiff to minimize overtime, the record does not show that he ever explained to Plaintiff the specific ways she could do so. Prior to Plaintiff's termination, Miller did not tell her that any of her overtime was unauthorized. Miller never instructed Plaintiff not to work on the Saturday at issue, and never told Plaintiff not to work at the Albany facility if it was closed. Other than the Saturday at issue, Defendant has not shown specific instances in which Plaintiff allegedly worked overtime when she was not supposed to, or that any overtime hours incurred by Plaintiff were excessive or otherwise unnecessary. Moreover, prior to Miller becoming her supervisor, Plaintiff appears to have worked overtime without any issues or problems. Plaintiff has also presented evidence that male employees worked overtime and were not disciplined. Taken together, the evidence presented by Plaintiff is sufficient to show that one of Defendant's stated reasons for termination—overtime—is pretextual.

Defendant's other stated reason is that Plaintiff argued with Miller during the May 28, 2019, meeting and refused to do certain job duties. However, Plaintiff and Miller have provided conflicting testimony regarding that meeting. Plaintiff's testimony—that she was not argumentative and did not refuse to do any job duties—supports a finding of pretext. Additionally, the "Personnel Action Form" completed by Miller does not mention anything about Plaintiff arguing with him or refusing to do job duties. Although this omission does not

14

itself establish pretext, it does support such a finding. Taken together, the evidence presented by Plaintiff is sufficient to show that a prohibited reason, rather than Defendant's stated reasons, resulted in the termination.

For all these reasons, the Court finds disputed issues of material fact on Plaintiff's claim for sex discrimination under the MHRA. Therefore, Defendant's motion for summary judgment on this claim is denied.

### B. Count II—Age Discrimination Under the MHRA.

Count II asserts an age discrimination claim under the MHRA. Absent direct evidence of discrimination, "claims of age . . . discrimination under the MHRA . . . are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas*[.]" *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 964 (8th Cir. 2006). The plaintiff must first present a prima facie case of age discrimination by showing: "(1) Plaintiff was a member of a protected class when her employment ended; (2) Plaintiff was qualified for the position she held with Defendant; (3) Plaintiff's employment was terminated; and (4) the circumstances surrounding her termination provide an inference of unlawful discrimination." *Book v. Am. Family Mut. Ins. Co.*, No. 5:19-06076-CV-RK, 2019 WL 3363532, at *1 (citing *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008)). If the plaintiff makes this showing, the burden shifts to the employer to articulate "a legitimate, nondiscriminatory reason for its actions." *Johnson*, 769 F.3d at 611. If the employer meets its burden, "the burden shifts back to the employee, who must then prove the employer's asserted reason was merely pretext for discrimination." *Id.*

### 1. Plaintiff Has Made a Prima Facie Case of Sex Discrimination.

For reasons similar to those discussed above, the first three elements of Plaintiff's prima facie case require little discussion. First, at the time of her termination, Plaintiff was 65 years old

and therefore a member of a protected class. *Stanley v. JerDen Foods, Inc.*, 263 S.W.3d 800, 803 (Mo. App. W.D. 2008) (recognizing that the "MHRA protects persons aged 40 to 70 from age discrimination"). Second, at the time of her termination, Plaintiff was qualified to perform the bookkeeper position. Third, Plaintiff's termination was an adverse employment action.

The parties primarily dispute the fourth element, which requires Plaintiff to present evidence that would permit an inference of age discrimination. An inference of age discrimination may be established when a plaintiff shows she "was replaced by a person significantly younger." *Rinehart v. City of Independence*, 35 F.3d 1263, 1269 (8th Cir. 1994). Here, Plaintiff was replaced by Ms. Russell who was 24 years old and significantly younger than Plaintiff. These facts are sufficient to create an inference of age discrimination. *Id.*

Defendant argues that even though Ms. Russell was younger than Plaintiff, Ms. Russell was already employed by Defendant, had relevant work experience, and that Ms. Russell did not engage in the same "insubordinate and unacceptable conduct as Plaintiff[.]" (Doc. #51, p. 11.) However, as discussed above, Plaintiff's younger replacement is sufficient to create an inference of age discrimination. *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008) ("Lance does not dispute Riley's contention that he was replaced with a substantially younger person. That fact alone gives rise to the necessary inference of age discrimination.") Further, Plaintiff's alleged insubordinate conduct is more relevant to whether Defendant has articulated a legitimate reason for the termination. For these reasons, Plaintiff has carried her prima facie burden.[9]

---

[9] Defendant also argues Plaintiff has not shown her age was the motivating factor in any adverse employment action. Defendant contends that "the sole reason for her termination" was "insubordinate conduct, continued use of unjustified overtime without authorization and arguing about her job duties with Miller." (Doc. #51, pp. 11-12.) This argument is rejected because there are disputed issues of material fact regarding the reasons for Plaintiff's termination.

16

### 2. Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination.

Defendant has presented evidence showing that it terminated Plaintiff's employment for improper overtime work and for arguing with Miller on the day of her termination. That evidence is sufficient to show a legitimate, non-discriminatory reason for Plaintiff's termination.

### 3. Plaintiff has Presented Evidence that Defendant's Reasons Were Pretextual.

Upon review, the Court finds Plaintiff has carried her burden of showing that Defendant's stated reasons were pretextual. As explained above, disputed facts exist regarding whether Plaintiff engaged in improper overtime work and whether she argued with Miller. Plaintiff has also presented evidence that after her termination, Ms. Russell worked overtime hours at the Albany facility. Unlike Plaintiff, Miller has never counseled or otherwise disciplined Ms. Russell about her overtime. Defendant fails to explain why Ms. Russell's overtime work was acceptable but Plaintiff's overtime work was unnecessary or excessive. In sum, Plaintiff has presented evidence that Defendant's stated reasons were pretextual.

For all these reasons, the Court finds disputed issues of material fact on Plaintiff's claim for age discrimination under the MHRA. Therefore, Defendant's motion for summary judgment on this claim is denied.

### C. Count III—Disability Discrimination Under the MHRA.

In Count III, Plaintiff asserts a claim for disability discrimination under the MHRA. To make a prima facie case of disability discrimination under the MHRA, a plaintiff must present evidence of the following elements: (1) she has a "disability" as defined by the MHRA; (2) her employer took an adverse employment action against her; and (3) evidence from which to infer

that her protected status was the motivating factor in the employer's adverse action. Mo. Rev. Stat. § 213.055.1; Mo. Rev. Stat. § 213.010; *Schierhoff*, 444 F.3d at 965 (applying Missouri law).

Upon review, the Court finds Plaintiff has not shown she has a disability under the MHRA. A "disability" means "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job . . . ." Mo. Rev. Stat. § 213.010(5).

In this case, Plaintiff's alleged disability is the inability to hear well out of her left ear which required her to use a hearing aid. However, Plaintiff admits she does not wear her hearing aid every day. Plaintiff sometimes choses not to wear it. The Court agrees with Defendant that "Plaintiff has produced no evidence to show that she has a condition that substantially limits a major life activity or is regarded as disabled." (Doc. #51, p. 13.)

There is also insufficient evidence to infer that the alleged hearing disability was the motivating factor in Plaintiff's termination. Plaintiff testified that during at least one conversation with a customer, Miller smiled at Plaintiff as if it was funny Plaintiff could not hear the conversation. Plaintiff also testified that Miller hollered at her from his office, even though he knew Plaintiff could not understand what he was asking. According to Plaintiff, Miller would also holler at her when she had a phone call instead of using the phone system like he did for other employees.

This limited evidence suggests that Miller's conduct was inappropriate or insensitive. But the alleged conduct does not "create a reasonable inference of discrimination, as the [conduct] do[es] not suggest discriminatory animus without resorting to speculation." *Takele v. Mayo Clinic*, 576 F.3d 834, 839 (8th Cir. 2009). Plaintiff has not presented evidence sufficient

to show that her hearing problems were "related in any way to the adverse employment action." *Lowery v. Hazelwood Sch. Dist.*, 244 F.3d 654, 659 (8th Cir. 2001).[10]

For these reasons, Defendant is entitled to summary judgment on Plaintiff's claim for disability discrimination under the MHRA. Count III is dismissed with prejudice.

### D. Count IV—Sex Discrimination Under Title VII.

In Count IV, Plaintiff asserts a claim for sex discrimination under Title VII. *See* 42 U.S.C. § 2000e, et seq. Absent direct evidence of discrimination, a Title VII claim for sex discrimination is analyzed under the *McDonnell Douglas* burden-shifting framework. *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1062 (8th Cir. 2020). The legal standards applicable to Plaintiff's Title VII claim are similar to those for sex discrimination under the MHRA. The parties also raise similar factual arguments for both the Title VII and MHRA sex discrimination claims.

Based on the overlapping facts and law, and for substantially the same reasons as discussed above, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's sex discrimination claim under Title VII. Defendant's motion for summary judgment on the Title VII claim is therefore denied.

### E. Count V—Age Discrimination in Employment Act.

Absent direct evidence of discrimination, a claim for age discrimination under the ADEA is analyzed under the *McDonnell Douglas* burden-shifting framework. *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 763 (8th Cir. 2021). The legal standards applicable to Plaintiff's ADEA claim are similar to those for age discrimination under the MHRA. The parties also raise similar factual arguments for both the ADEA and MHRA age discrimination claims.

---

[10] The Court need not address Defendant's remaining arguments in support of summary judgment on this claim.

Based on the overlapping facts and law, and for substantially the same reasons as discussed above, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's claim for age discrimination under the ADEA.  Defendant's motion for summary judgment on the ADEA claim is therefore denied.

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED that Defendant MFA Incorporated's Motion for Summary Judgment (Doc. #50) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED insofar as Plaintiff's claim for disability discrimination under the MHRA (Count III) is DISMISSED WITH PREJUDICE.  The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  September 10, 2021